James BROWN, Plaintiff,

v.

Thomas COUGHLIN, III, Commissioner of the New York State Department of Correctional Services; Stephen Dalsheim, Superintendent of the Downstate Correctional Facility; Dr. Anthony Forte, Senior Doctor at Downstate Correctional Facility; Lillian Carpenter, Nurse Administrator at Downstate Correctional Facility; Gregory Mitchell, Counselor at Downstate Correctional Facility; Jacqueline McMickens, Commissioner of the New York City Department of Corrections; Allen Goldberg, Director of Prison Health Services of the New York City Department of Health; Thomas Reed, Prison Health Services Unit Administrator for Rikers Island Hospital; John Gallagher, Deputy Warden in Command of Rikers Island Hospital; Dr. Wallace Rooney, Medical Director of Rikers Is-

---

land Hospital; Dr. Ernest Stuart, Chief Physician of Rikers Island Hospital; John McLaughlin, President of the New York City Health and Hospitals Corporation; Ira Clark, Executive Director and Regional Administrator of the Kings County Hospital Center; Edward I. Koch, Mayor of the City of New York; individually and in their official capacities, Defendants.

No. 87 Civ. 1326 (KTD).

United States District Court,
S.D. New York.

Jan. 18, 1991.
Amended Order March 8, 1991.

Koob, Magoolaghan & Salzman, New York City (Elizabeth L. Koob, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y. (Tarquin Jay Bromley, Barbara P. Demchuk, of counsel), Victor A. Kovner, Corp. Counsel (Norma Kerlin, of counsel), New York City, for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff James Brown commenced the instant civil rights action for deliberate indifference to his medical needs against the following defendants: (1) Thomas Coughlin, III, Commissioner of the New York State Department of Correctional Services ("DOCS"); (2) Stephen Dalsheim, Superintendent of the Downstate Correctional Facility ("Downstate"); (3) Dr. Anthony Forte, Senior Doctor at Downstate Correctional Facility ("Downstate Hospital"); (4) Lillian Carpenter, Nurse Administrator at Downstate Correctional Facility; (5) Gregory Mitchell, Counselor at Downstate Correctional Facility; (6) John Gallagher, Deputy Warden in Command of Rikers Island Hospital; (7) Dr. Ernest Stuart, Chief Physician of Rikers Island Hospital (collectively "the state defendants"). Brown further names as defendants in this action: (1) Jacqueline McMickens, Commissioner of the New York City Department of Corrections; (2) Allen Goldberg, Director of Prison Health Services of the New York City Department of Health; (3) Thomas Reed, Prison Health Services Unit Administrator for Rikers Island Hospital; (4) Dr. Wallace Rooney, Medical Director of Rikers Island Hospital; (5) John McLaughlin, President of the New York City Health and Hospitals Corporation ("HHC"); (6) Ira Clark, Executive Director and Regional Administrator of the Kings County Hospital Center ("Kings County Hospital"); and (7) Edward I. Koch, Mayor of the City of New York (collectively "the city defendants"). Brown alleges that his civil rights were violated, pursuant to 42 U.S.C. §§ 1983, and 1988 and under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution had been violated due to denial of due process and being subjected to cruel and unusual punishment in the allegedly deliberate indifference of the state and city to his serious medical needs. Additionally, Brown sets forth a pendent state claim against the municipal defendants for negligence, medical malpractice, and/or gross negligence. Brown further moves for a protective order, waiving responses to the municipal defendants' local Rule 46 interrogatories. The municipal defendants cross-move to compel Brown's compliance with the interrogatories. By Order to Show Cause on April 25, 1990, the municipal defendants moved pursuant to Fed.R. Civ.P. 56 for an order granting summary judgment, dismissing the complaint. The state defendants move pursuant to Fed.R. Civ.P. 12(c) for a judgment on the pleadings, dismissing the pendent state malpractice, negligence and/or gross negligence claims against the state defendants and all claims federal and state against Coughlin, Dalsheim, Carpenter and Mitchell.[1] All of the above named defendants are being sued both as individuals and in their official capacities.[2]

## FACTS

On March 13, 1985, Brown was arrested and charged for attempted murder, attempted robbery, and assault.[3] Upon being delivered to the custody of the New York City DOCS, he presented with a bone fracture in his right leg which apparently occurred at some time prior to his arrest.[4] He was taken to Woodhull Medical Center, a New York HHC facility, x-rayed and diagnosed as having a comminuted fracture of his right tibia and fibula. His wound was cleansed, the leg splinted, and he was administered antibiotics intravenously.

---

1. Defendant Gallagher, Deputy Warden in charge of Rikers Island infirmary was never served with a summons and complaint. The complaint is therefore dismissed as against him. *See* Municipal Defendants 3(g) ¶ 23.

2. All claims against defendants Carpenter and Mitchell and state law claims against defendants Coughlin and Dalsheim are hereby dismissed as unopposed by Brown.

3. On December 15, 1985, Brown plead guilty to one count of attempted robbery in the first degree. He was sentenced to a term of imprisonment of three and one-half to seven years on February 11, 1986. Municipal Defendants 3(g) ¶ 18; Order to Show Cause, Exh. A ¶¶ 27–28.

4. There is no allegation that the bone fracture occurred in connection with police intervention or the arrest.

Municipal Defendants 3(g) ¶¶ 6–9.[5] At 9:52 p.m. on March 13th, Brown was transferred to Kings County Hospital, under the auspices of HHC, and underwent surgery. He remained at Kings County Hospital until March 22, 1985. Municipal Defendants 3(g) ¶¶ 11–13. From March 22nd to October 8th, Brown was housed at the Brooklyn House of Detention, a correctional institution under the auspices of the New York City DOCS. Municipal Defendants 3(g) ¶ 14. Brown was readmitted to Kings County Hospital for additional surgery, remaining there from October 8, 1985 to November 6, 1985. He then went back to the Brooklyn House of Detention until November 7th when he was sent to Rikers Island Infirmary, under the jurisdiction of the New York City Department of Health. Municipal Defendants 3(g) ¶¶ 15–17.

Brown underwent additional surgery on February 18, 1986 and remained in Kings County Hospital until March 14, 1986. From March 14th to the 24th, Brown was housed at Rikers Island Infirmary. On March 24, 1986, Brown was transferred to the New York State DOCS and never returned to any City facilities after that date.[6]

Immediately after being in the city defendants' custody, Brown was transferred to Downstate, a state medical facility, where he remained until he was transported to Westchester County Medical Center for outpatient evaluation of his condition. Complaint ¶ 33. He was transported back to Downstate until May or June of 1986 when he was transported to St. Lukes Hospital. A persistent infection remained in Brown's leg. At St. Lukes, a bone scan and culture of the infected leg was performed. Complaint ¶ 34. In June 1986, Brown was transferred to Julia L. Butterfield Memorial Hospital ("Butterfield") and underwent two additional surgeries to his leg. The infection never cleared, the condition worsened. Complaint ¶ 36. On October 9, 1986, Brown filed a grievance with the Downstate Inmate Grievance Resolution Committee requesting a transfer to a larger hospital for treatment and further evaluation. Complaint ¶ 39. Brown was told that the leg would have to be amputated and a petition for a writ of habeas corpus, ordering to be transferred from Butterfield to the larger Downstate facility, was denied. Complaint ¶ 42. Brown then reinstituted his writ of habeas corpus seeking an order to be transferred to a larger medical center. By decision dated November 6, 1986, Brown's grievance requesting a second medical opinion was granted at the state's expense. Complaint ¶ 44. Brown was transferred to Helen Hayes Hospital for a second opinion. The evaluating physician agreed that the leg had to be amputated and he transferred Brown back to Butterfield for the surgery. Complaint ¶¶ 43–45. Brown's leg was amputated and he was subsequently returned to Helen Hayes Hospital for a prosthesis. Complaint ¶ 45.

## DISCUSSION

### A. The Municipal Defendants

1. Federal Claims:

The municipal defendants have moved for summary judgment on the close of discovery on the claim that Brown's evidence is insufficient to establish the requisite elements essential to a claim under 42 U.S.C. § 1983 or the federal constitution. Also, the municipal defendants ask the Court to dismiss Brown's pendent state claim because of a failure to file or to allege the filing of a notice of claim.

█ Summary judgment must be entered after adequate time for discovery has

---

5. I rely solely on the rendition of the facts in the municipal defendants' statement pursuant to the Southern District of New York local rule 3(g). Thus, any exception that the municipal defendants voice regarding Brown's failure to state the facts within his knowledge, pursuant to Fed. R.Civ.P. 56(e), may be avoided.

6. At this juncture, I will rely on the allegations as set forth in Brown's complaint because the state defendants move this Court pursuant to Fed.R.Civ.P. 12(c), requesting that judgment be rendered on the pleadings. It is mandatory that the complaint be viewed in the light most favorable to the complainant and that the Court not rely on matters outside the pleadings under the circumstances.

passed and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy the burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331 (Brennan, J., dissenting in result, but concurring with legal analysis of majority, and citing 10A Wright sec. 2727, pp. 130–31 and Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745–50.)

In order to establish a claim under 42 U.S.C. § 1983, plaintiff must establish by a preponderance of the evidence that: (1) the conduct complained of was committed by a person acting under color of state law; (2) that this conduct deprived the plaintiff of rights and privileges secured by the Constitution or laws of the United States; and (3) that the defendants' acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

That the municipal defendants at bar were acting under the color of state law is undisputed.

In order for the plaintiff to establish the second element, he must show by a preponderance of the evidence that the defendants committed the acts alleged by plaintiff and that those acts caused plaintiff to suffer the loss of a federal right. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff must also show that the defendant intended or was reckless in bringing about the offensive acts which caused the deprivation of a federal right. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Finally, the plaintiff must show that the defendants' acts were the proximate cause of plaintiff's injuries. There must be a sufficient causal connection between the act or omission of each separate defendant and any injury or damage suffered by plaintiff. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The municipal defendants claim that Brown has failed to establish that any of the municipal defendants deprived him of a constitutional right. For purposes of this type of motion, I must disagree. The constitutional obligation of the defendants to meet certain minimum standards of medical care for individuals held in custody is traceable to both the Eighth Amendment prohibition against the imposition of "cruel and unusual punishment," as applicable to the states under the Fourteenth Amendment's guarantee of "due process." *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), *reh. denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982). *See also Deshaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 198, 109 S.Ct. 998, 1004–05, 103 L.Ed.2d 249 (1989). Specifically:

> When a person is institutionalized—and wholly dependent on the State ... a duty to provide certain services and care does exist. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable

safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble, supra.* [429 U.S.] at 103 [97 S.Ct. at 290] ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protection of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Deshaney v. Winnebago County,* 489 U.S. 189, 200, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (citations omitted).

Indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. at 104–05, 97 S.Ct. at 291; *see e.g., Williams v. Vincent,* 508 F.2d 541 (2d Cir.1974) (doctor choosing the easier and less efficacious treatment, throwing away prisoner's severed ear and merely stitching the stump, may be attributable to deliberate indifference rather than the exercise of professionally sound judgment). The municipal defendants failed to provide adequate enough care to keep Brown's osteomyelitis, or bone marrow infection, at bay. This situation may well be worse than the aforementioned where the doctor refused to sew a severed ear back onto the defendant. That procedure required a significant level of expertise whereas Brown's condition, a broken leg, surely has a clear prognosis of complete and uncomplicated recovery in the normal course with a modicum of adequate treatment. Here, Brown's condition was one which could easily be remedied by diagnostic testing. The record before me indicates, however, a possible or apparent denial of medical care by repeated instances of denied treatment, excessively delayed care, substantial delays in follow-up appointments and diagnostic testing, incorrect medications, improper or inadequate treatment, failure to transfer necessary medical records in a timely fashion, noncompliance with medical orders, and failure to prioritize his status for placement in a larger tertiary care facility upon learning of the festering infection. This adequately indicates or constitutes a systemic failure to follow minimum professional standards in the delivery of care.

Even one isolated failure to treat, without more, while ordinarily not actionable, may in fact rise to the level of a constitutional violation if the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987). A significant delay in treatment may also constitute a violation under the Eighth and Fourteenth Amendments. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986) (five-to-six hour delay can constitute violation); *Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984) (5–hour delay held to constitute violation).

In determining whether a party is guilty of deliberate indifference under a due process analysis or under the Eighth Amendment, a pattern of omissions may permit the inference of such "deliberate unconcern for plaintiff's welfare," and that evidence of "gross negligence"—although not equivalent to "deliberate indifference" —"creates a strong presumption of deliberate indifference." *Doe v. New York City Dep't of Social Services,* 649 F.2d 134, 143–45 (2d Cir.1981), *reaff'd,* 709 F.2d 782 (1982), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In the case at bar, Brown alleges a pattern of apparent omissions on the part of

the municipal defendants. Although he fails to attribute specific acts to specific officials, the allegations clearly set out a pattern from which one might infer at least deliberate unconcern for Brown's apparent suffering. This unconcern could be attributable to the hospitals and the institutions alike. Such deliberate indifference could be adduced against the municipal defendants who, in their rendition of the facts, indicated a course of events lasting almost a year which lead Brown's broken leg to fester until it required removal by amputation. From the evidence, one could also find a pattern of behavior by prison and hospital officials which left an incarcerated man to suffer the pain of osteomyelitis without giving heed to his cries for help. The existence of a pattern of suffering might be taken to show that the described incidents were not "accidents", "inadvertent failures" or random occurrences of medical malpractice. *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977). Further:

> While a single instance of medical care denied or delayed, viewed in isolation may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill conceived procedures.

*Id.*

In this case, the municipal defendants all but outright admit denial of medical care. It is deplorable that Brown's leg was allowed to fester and worsen, especially in light of his continued and consistent complaints of severe pain over several months time. This could be construed as a complete unconcern for his well-being and a violation of the Eighth and Fourteenth Amendments. *See Smitherman v. New York City Dep't of Correction Investigation Complaint Unit*, 557 F.Supp. 877, 878 (S.D.N.Y.1983) (allegation of conduct which is barbarous or shocks the conscience constitutes Eighth Amendment violation under 42 U.S.C. § 1983).

The municipal defendants further claim entitlement to summary judgment on their contention that Brown has failed to state a claim because the complaint does not specify municipal policies, procedures or customs or specific acts by defendants and because, "at the close of discovery," Brown does not have sufficient evidence to hold any of the municipal defendants liable for constitutional violations of Brown's rights. Surely the aforementioned omissions indicate the genuineness of the issues sufficient to present to factfinders.

If there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of plaintiff, then that is enough of a showing to thwart imposition of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In determining this issue, I am aware that courts must proceed cautiously, and not perform the role of fact finder. If there is any evidence in the record from any source from which a reasonable inference in the plaintiff's favor may be drawn, the moving party simply cannot obtain a summary judgment. *Id.* I find that to the extent the evidence was set forth in the complaint and the municipal defendants' statement pursuant to local rule 3(g), there are sufficient claims and questions of fact that must be presented to a jury. *Compare Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (where record taken as a whole could not lead rational trier of fact to find for non-movant for summary judgment, no genuine issue of fact remains for trial; non-movant must show more than mere metaphysical doubt as to the material facts). To the extent that the evidence, as set forth in Brown's responsive papers and in the municipal defendants' statement pursuant to local rule 3(g), sufficiently demonstrates Brown's having suffered neglect at the hands of the municipality, the municipal corporation, and the individual municipal defendants, this shows that the claims are neither implausible nor doubtful in some esoteric or metaphysical sense. It is thus improper to award the municipal defendants summary judgment at this juncture. Likewise, it is improper to dismiss any federal question causes of action against any of the munici-

pal defendants in their official or individual capacities at this time.

Clearly, Brown has claimed a deprivation of his rights under the Eighth and Fourteenth Amendments to the Constitution, arising from defendants' deliberate indifference to his serious medical needs. The municipal defendants do not dispute that any actions or omissions on their part were under color of law, nor that Brown had a constitutionally protected right to necessary and appropriate medical treatment while under the care and custody of the New York City DOCS. Furthermore, for the purposes of this motion, they do not deny Brown's claims that he suffered serious injury as the result of an unconstitutional deprivation of medical care.

Any dispute of Brown's claims of inadequate treatment, and whether such treatment rose to unconstitutional proportions, clearly raises questions of fact which can only be resolved at trial. As such, Brown establishes that triable issues of fact were adduced, raising questions of fact that only can be resolved at trial.

Furthermore, the municipal entities may be held liable if the constitutional violation can be shown to have resulted from the enforcement of an official policy, custom, or decision of the involved municipal entity. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To the extent that the doctrine of *respondeat superior* is inapplicable in § 1983 claims, sufficient questions of fact remain whether the denial of adequate care at bar resulted from a policy, custom, or municipal decision. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (a policy implies a course of action seriously chosen over from various other alternatives which exist at the time). Where plaintiff was totally dependent upon the defendants' medical care system, the municipality had an affirmative, constitutionally mandated duty to provide a system designed to meet his reasonably foreseeable needs. *Doe v. New York City Dept. of Social Services,* 649 F.2d at 141 ("Government official may be held liable under section 1983 for a failure to do what is required as well as for overt activity which is unlawful and harmful.... when individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution").

Finally, the question of an individual's personal involvement is a question of fact. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). If there are disputes as to material facts concerning the defendants' involvement, summary judgment is inappropriate. *Id.* The broad allegation that the municipal defendants at bar did not participate in the creation or continuation of customs or policies concerning the medical system is insufficient to withstand Brown's opposition to summary judgment. *See id.* at 324 (plaintiff need not rebut undocumented, broad allegation of no involvement in order to survive a motion for summary judgment.)

In sum, I find that there are genuine issues of material fact as to whether the injuries suffered by Brown were the foreseeable result of systemic and systematic inadequacies and whether such inadequacies are specifically traceable to municipal policies or customs, including deliberately indifferent training, supervision, staffing, and/or the acts, omissions or decisions of named individual defendants.

### 2. Pendent State Claim:

The municipal defendants next argue that Brown's pendent claim for negligence and/or malpractice should fall because of his failure to file and perfect a Notice of Claim pursuant to General Municipal Law §§ 50–e and 50–i against the state in the Court of Claims.

In a few instances, certain conditions precedent must be met before suing. Filing a notice of claim is a condition precedent to suing a city, county, town, or village. The filing must ordinarily be done within ninety days of the accident. Gen. Munic.L. § 50–e(1)(a). Time for filing may be extended only so far as the time for

accrual of the action has not lapsed. In addition, New York's General Municipal Law § 50–e applies to federal civil rights claims, including those brought pursuant to 42 U.S.C. § 1983. D. Siegel, New York Practice 31–33 (West Pub. Co. 1978 & Supp.1987) (citing *Mills v. County of Monroe,* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983)).

The parties are agreed that, between March 30, 1985 and November 23, 1985, Brown filed four notices of claim *pro se.* The first three notices were filed with the Comptroller of the City of New York under Gen.Munic.L. § 50–e and the fourth, dated November 23, was filed with the HHC pursuant to Unconsolidated Laws of New York § 7401.[7] Brown maintains that these four notices clearly set forth enough information to precipitate an investigation both into the appropriateness of Brown's placement at the Brooklyn House of Detention and the adequacy of his medical treatment as provided by Prison Health Services and the HHC. *See O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) (test of a notice's sufficiency is whether it includes information sufficient to enable the city to investigate claim.)

■ On the contrary, the municipal defendants maintain that the notice of claim was fatally deficient essentially because Brown's incorrect filing failed to provide notice for either New York City's Department of Health or HHC with respect to common law malpractice and negligence claims. Specifically, the fourth claim, dated November 23, 1985, was served upon the HHC for refusal of full medical attention at the Brooklyn House of Detention. Medical care at the Brooklyn House of Detention is provided by Prison Health Services of the Department of Health, and not by HHC. Thus, according to the municipal defendants, improper notice was afforded both entities. I agree. Although at the time that Brown plead guilty, State Su-

preme Court Justice M.L. Pesce called for immediate medical care to be provided before Brown was to be shipped upstate, that, even in hand with the notices which were filed, provides insufficient notice to both the HHC and New York's Department of Health because both entities were wrongly served.

If a city entity is improperly served with a notice of claim intended for another facility or corporation, it cannot be presumed that the entity will undertake an investigation, nor is a duty owed for the claims to be fully investigated. Moreover, invalidities in a notice of claim are, in some instances curable, however, Brown, even after being given notice of the deficiencies, failed to timely cure them. *See* D. Siegel, New York Practice 31–33 (West Pub. Co. 1978) (if the notice of claim is served on time, but in an improper manner, the defect is waived if the defendant demands an examination of the plaintiff).[8] Although the claims herein may be meritorious, incurable filing defects as per the statute are fatally deficient and my hands are completely tied.

Finally, since the time that Brown filed his notices of claims *pro se,* he submits that, at least with respect to claims for malpractice, the time for filing deficient notices should be extended because he has been continuously treated by city and state facilities for his broken leg. As such, he argues that the time for filing is tolled so as to accommodate both city and state time periods in which he received continuous care for the same leg condition. Brown thus avers that the time for filing the Notice of Claim is not beyond the statutory period.

■ "The continuous treatment rule" serves to toll the time for service of the Notice of Claim in cases where the course of treatment which includes the wrongful acts has run continuously and is related to the same original condition. *Borgia v. New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). The doctrine

7. Although the card for the claim dated November 23, 1985 was misfiled and the file not located until May 24, 1990, there is no dispute that the Legal Office of the HHC received the claim.

8. Nothing in the record indicates that the municipal defendants requested to depose Brown.

was developed, however, to provide a safeguard to patients who, during the course of their treatment, did not want to jeopardize their physician-patient relationship by threatening legal suit during the same time and course of treatment with that very same physician. Therefore, the time in which to perfect a claim tolls until just after the patient's final visit ends. Here, Brown's treatment ended, for the purposes of filing a notice of claim against City entities, when he left the city system and was moved into the state health care system. Thus, the last date on which Brown could have sought leave to file a late notice was on June 24, 1987, one year and ninety days after the last date of continuous treatment in City or HHC facilities. Brown failed to do so. Moreover, he failed to do so after having been put on notice by the municipal defendants' answer dated May 8, 1987 which contained a notice of claim defense based upon Brown's failure to include in his complaint statutorily mandated allegations regarding the filing of the notice of claim pursuant to Gen.Munic.L. § 50–i. Therefore, I find that Brown's three notices of claims failed to provide sufficient notice of his actual claims of negligence and malpractice and cannot be construed as meeting the requirements of the General Municipal Law sufficient to withstand dismissal of the pendent state claim at this juncture.

3. Motion for a Protective Order:

Brown moves pursuant to Fed.R.Civ.P. 26(c) for an order of protection, striking the Municipal defendants' local Rule 46 Interrogatories, dated May 21, 1990. The Municipal defendants cross-move to compel Brown to respond to the Interrogatories.

 Because the interrogatories seek more than what was required and provided in Brown's response to the municipal defendants' motion for summary judgment, Brown must comply by responding to the May 21st set of interrogatories. Moreover, the interrogatories are not untimely for they were served on the last day of discovery. Finally, the interrogatories are manifestly not burdensome, but are nar-

rowly drawn to determine, with specificity, Brown's claims against each defendant, information absolutely necessary to the defendants at trial. *See e.g., Friedlander v. New York,* 1989 WL 5280, 1989 U.S.Dist. LEXIS 627 (E.D.N.Y.1989) (interrogatories properly drawn provide a less intrusive means to narrow the issues and the parties for an impending trial).

B. *The State Defendants*

1. Pendent State Claims:

 The state defendants move pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings, dismissing the pendent state claim for failure to correctly bring the claim against the state. New York State Correction Law § 24 prohibits a civil action from being brought against any officer or employee of DOCS in his personal capacity for damages arising out of any act done or the failure to perform any act within the scope of employment. McKinney's Correction Law § 24 (1987); *Cepeda v. Coughlin,* 128 A.D.2d 995, 513 N.Y.S.2d 528 (3d Dep't), *app. denied,* 70 N.Y.2d 602, 518 N.Y.S.2d 1024, 512 N.E.2d 550 (1987). The state further argues that no person can sue an officer or employee of DOCS in his personal capacity in state court for damages arising out of any act done or the failure to perform any act. Any claim for damages against a DOCS individual must be brought as a claim against the State of New York in the Court of Claims. Therefore, there are no pendent state claims which can be brought against state defendants Coughlin, Dalsheim, Forte, Carpenter, and Mitchell individually. McKinney's Correction Law § 24.

Although state claims may fall as against the persons of the state defendants, the claims must survive as against the defendants in their official capacities. According to the state defendants, state law provides that the only valid claims in the instant matter are and must be asserted against New York State and because the State of New York is not physically named in the caption, showing that the State is being sued, the state claims must fall. This argument defies logic. If viewed in a

vacuum, as the state defendants present the argument, then Brown would have no forum in which to bring his state claim except in the New York Court of Claims. I disagree.

■ It is axiomatic that the Eleventh Amendment prohibits suits against the state being brought in Federal Court. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). Therefore, *pro forma,* the way in which state plaintiffs circumscribe the problem is by naming representative state officials as individuals and/or in their official capacities for state claims pendent to federal claims. Otherwise, a plaintiff under 42 U.S.C. § 1983 would be absolutely precluded from bringing state claims into the federal court, thereby thwarting notions of judicial economy and timely resolutions. *Compare United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (doctrine of pendent jurisdiction remains one of sound judicial discretion and court should decline to hear pendent state claims only if it would work an injustice between the parties, waste judicial resources, or generate needless decisions of state law.) That Brown's counsel chose to forego suit in the Court of Claims, instead annexing them as pendent to the federal claims at bar, is not a tactical error and in no way affects my ability to retain jurisdiction over the state claim as long as the federal claims survive.

"[T]here may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.R.Civ.P. 42(b). If so, jurisdiction should ordinarily be refused." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 727, 86 S.Ct. 1130, 1139, 1139, 16 L.Ed.2d 218 (1966). The state defendants aver that because retaining jurisdiction over the pendent state claims is within my sound discretion, justice warrants that I refuse to exercise pendent jurisdiction over the state law claims because they arise under divergent legal theories and as such would be unduly confusing to a jury. I disagree. Over the

past eighteen years, it has been my pleasure to empanel many juries. I give notable deference to the experience of seeing jurors undertake their fact finding tasks with a great sense of industry and civic duty. That an injustice will be occasioned upon the State defendants if a jury of ordinary citizens is asked to distinguish or keep the liability standards for the pendent state claims separate and apart from the federal standard is nonsense.

■ Specifically, the State defendants maintain that to establish an Eighth Amendment claim based on the alleged inadequacy of prison medical treatment, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Mere negligence is not actionable. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* Rather the plaintiff must allege conduct that is "repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* at 102, 105, 106, 97 S.Ct. at 290, 291–292. Although it is within my discretion not to exercise pendent jurisdiction over a claim that may work an undue hardship on the abilities of jurors, I believe that with proper jury instruction the differences in the above standards could not be clearer. Indeed, I have several hundred times entrusted jurors with success to make even more esoteric distinctions than these. Therefore, I find it proper to exercise pendent jurisdiction over the state claims at bar.

Finally, the State defendants allude to the fact that Brown fails to allege sufficient facts to state a claim under the Eighth Amendment and 42 U.S.C. § 1983. While it is true that an allegation complaining about a decision based on medical judgment does not represent cruel and unusual

punishment and at most constitutes medical malpractice actionable only in state court, Brown asserted enough to sustain claims for deliberate indifference to serious medical needs as per the Eighth Amendment for essentially the same reasons that are set forth above regarding the municipal defendants. Essentially, it is properly alleged that the state defendants finished the job that the municipal defendants began, wholly neglecting and showing a deliberate indifference to Brown's serious medical needs. Contrary to the State's position, I find that the complaint states a claim under 42 U.S.C. § 1983 sufficient to withstand this motion for a judgment on the pleadings.

2. Federal Claims:

The State seeks a judgment, dismissing all state and federal claims for failure to state an Eighth Amendment claim for monetary damages against defendants Coughlin, Dalsheim, Carpenter, and Mitchell.[9] According to the State defendants, there are no claims and there is no evidence that Commissioner Coughlin had any knowledge of this matter whatsoever. The only claims concerning Messrs. Dalsheim and Mitchell involve their knowledge of the alleged deprivations because they relied on the information given to them by other DOCS personnel and on the medical judgment of the outside health care providers involved in Brown's care. Further, according to the state, there are no allegations that either Nurse Carpenter or any of the nursing staff failed to provide the treatment prescribed by the doctors and physician's assistants who handled Brown's care at Downstate.[10]

 Brown apparently sues these persons on a theory of *respondeat superior* which is not applicable in an action for damages under 42 U.S.C. § 1983. *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.

1977). The personal involvement of a defendant is a strict prerequisite to the imposition of monetary liability. *Procunier v. Navarette*, 434 U.S. 555, 566, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978); *Green v. Coughlin*, 633 F.Supp. 1166, 1168 n. 4 (S.D.N.Y. 1986) ("Commissioner Coughlin has the dubious honor of being named as a defendant in almost all prisoner civil rights suits.") In the context of a § 1983 claim against a prison official, the personal responsibility requirement is satisfied only when "the failure to supervise ... [is] so severe as to reach the level of gross negligence or deliberate indifference." *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.1979), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). When the suit is based upon an alleged inadequacy of medical care, moreover, "a mere failure to supervise, not reaching the level of gross negligence, [is] ... not actionable ... even if a showing of deliberate indifference on behalf of subordinate personnel has been made." *Tomarkin v. Ward*, 534 F.Supp. 1224, 1232 (S.D. N.Y.1982). Therefore, it must be alleged that the official acquiesced in a course of treatment that a reasonable lay person would know to be deliberately indifferent to serious medical needs.

The State defendants maintain that the complaint here contains no allegations that Commissioner Coughlin and/or Superintendent Dalsheim participated in any alleged deprivation of medical care to Brown and there is no evidence that they encouraged, supervised, directed, or controlled the medical treatment rendered Brown. Moreover, the State argues that Brown has the burden of pleading and proving that each defendant had sufficient personal involvement in the alleged deprivation of medical care in order to warrant the imposition of personal liability and an award of monetary damages under § 1983.

9. The state defendants claim that while in Downstate, the state health care facility, Brown was cared for by Dr. Louis Nunez, a board certified orthopedic surgeon, who was not then and is not now an employee of DOCS, nor is he a defendant in this action. State Memo in Support of Dismissal, p. 3. Dr. Nunez thus has no

bearing on this suit. No request to amend the complaint was suggested.

10. Brown submits that all claims as asserted against Carpenter and Mitchell and the state law claims against Coughlin and Dalsheim should be dismissed without opposition.

At this juncture, Brown need not prove anything as long as the pleadings are sufficient to withstand summary dismissal on the pleadings. Furthermore, a supervisory official may be personally liable under 42 U.S.C. § 1983 as follows:

The defendant may have directly participated in the infraction.... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong.... A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.... A supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event....

*Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

 Furthermore, the record before me documents deficiencies which maў be construed to be elemental and systemic in nature in the delivery, or lack thereof, of care at the Downstate Correctional Facility. Accordingly, the record indicates the possibility that Coughlin and Dalsheim showed a deliberate indifference to Brown's serious medical needs. I find that enough information can be gleaned from the facts as pleaded to show that Coughlin and Dalsheim could be charged with knowledge of the unconstitutional conditions pervading at Downstate in accordance with a low standard of health care delivery at the facility. Where, as here, there is a factual dispute as to whether the state defendants' conduct constituted deliberate indifference to Brown's serious medical needs, summary dismissal is unwarranted and unduly prejudicial. *See Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Hathaway v. Coughlin,* 841 F.2d 48 (2d Cir.1988) (to decide question of deliberate indifference is to make an impossible factual finding in a summary dismissal stage).

11. Moreover, with regard to Brown's pendent claims, although I find the complaint does not constitute adequate notice to the municipal defendants under either section 50–e of Gen.Munic.Law or section 7401(2) of the Unconsolidated

Finally, Coughlin and Dalsheim cannot avoid liability because they relied on the judgments exercised by the medical staff. Such arguments have been firmly rejected in the past. *See United States v. Leon,* 468 U.S. 897, 922–23, n. 23, 24, 104 S.Ct. 3405, 3420–21 n. 23, 24, 82 L.Ed.2d 677 (1984) (Court rejected police officers' claims for qualified immunity based on their reliance on the judgments of judicial officers who had approved applications or warrants). Each defendant must be held to a standard of reasonable judgment for someone within the range of professional competence in his or her particular official position. I find that both defendants Coughlin and Dalsheim held positions which required their own duty to ensure adequate delivery of medical services to inmates such as Brown.

For the foregoing reasons, all claims against defendants Carpenter and Mitchell and state law claims against defendants Coughlin and Dalsheim are hereby dismissed as unopposed by Brown. Having failed to comply with a condition precedent for any action against Kings County Hospital, Department of Health, or any HHC hospital, motion for summary judgment and a dismissal of the pendent state claim is granted in favor of the municipal defendants.[11] Brown's motion for a protective order is denied. The Municipal Defendants' cross-motion to compel discovery is granted. Brown is hereby directed to respond to the municipal defendants' interrogatories by April 15, 1991. This case will then be set down for trial. Insofar as the complaint claims individual liability of the persons of the defendants, the case survives pending Brown's response to interrogatories. Also, the complaint survives in all other respects against all of the remaining defendants in their individual and official capacities.

SO ORDERED.

Laws, Brown is hereby awarded certification to appeal that issue pursuant to 28 U.S.C. § 1292(b). *Shakur v. McGrath,* 517 F.2d 983 (2d Cir.1975).

**890**

### AMENDED ORDER

This is to amend my Memorandum and Order of January 18, 1991. Page 3 of the decision should reflect the fact that John Gallagher and Dr. Ernest Stuart are municipal defendants, rather than state defendants. As to Dr. Ernest Stuart, because he was never served with a complaint in this action, the complaint is dismissed as to him.

SO ORDERED.