**Taleek BOYD, Plaintiff,**

v.

**C.O. Anthony SELMER, C.O. Steven Boyd, C.O. William Lotano, Sergeant Wayne Ross, Defendants.**

**No. 91–CV–0661.**

United States District Court, N.D. New York.

Jan. 5, 1994.

Gavin Cook, Prisoners' Legal Services, Albany, NY, for plaintiff.

Kevin J. Acton, Asst. Atty. Gen., Office of Atty. Gen., State of NY, Albany, NY, for defendants.

### MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

New York State prison inmate Taleek Boyd brought this action pursuant to 42 U.S.C. § 1983 against the defendants seeking compensation for damages arising out of events which occurred on May 30, 1990, at Coxsackie Correctional Facility. Plaintiff alleges that on May 30, 1990, he was subjected to excessive force during an altercation with prison guards in violation of his rights secured by the Eighth Amendment. The matter was tried to the bench in Albany, N.Y. on December 16 and 17, 1993. The following constitutes the court's findings of fact and conclusions of law as required by Fed. R.Civ.P. 52.

## I. FINDINGS OF FACT

### A. Operative Events of May 30, 1990

Plaintiff's complaint has its genesis in a disturbance which occurred on May 30, 1990, in the special housing unit at Coxsackie. Plaintiff alleged in his complaint that on this date he was repeatedly struck about the arms and wrists by the various defendants in a dispute over his available recreation time. Plaintiff further alleged that the beating he received at the hands of prison authorities

was administered without provocation. Defendants asserted in their pre-trial papers and at trial that a different course of events occurred on May 30, 1990. They claimed that the plaintiff attempted to assault defendant Selmer and refused to adhere to several orders issued by correctional officers instructing him to place his hands within his cell. After repeatedly being warned of the possibility of physical force being used against him, the plaintiff continued to refuse to comply with the instructions and consequently was struck several times upon the arms in order to facilitate the closing of a "feed-up" flap located on the cell door. The court will now examine the two versions of the events of May 30, 1990.

**Plaintiff's Version:**

At trial, the plaintiff testified as to his version of the events that took place on May 30, 1990. From this testimony it appears that on the morning of May 30, 1990, the plaintiff requested recreation time later in the day. In accordance with the correctional facilities policies, the plaintiff was required to surrender his sneakers to a guard prior to being allowed out for recreation so that the guard could inspect them for contraband. It is the plaintiff's testimony that he adhered to this rule and defendant Selmer inspected his sneakers and then placed them on the ground in front of plaintiff's cell.

Sometime after the sneakers were placed on the ground and defendant Selmer left the area, an inmate across the corridor from the plaintiff tried to procure the plaintiff's sneakers through a technique known as "fishing". Upon seeing this other prisoners attempt to obtain his sneakers, plaintiff called for the assistance of defendant Selmer. Defendant Selmer responded and plaintiff indicated that he wanted his sneakers placed back within his cell. Selmer instructed plaintiff that he would give back his sneakers but reminded him that the facility had a policy that required an inmates sneakers to be placed outside his cell prior to the inmate being allowed to proceed to recreation. Failure to abide by this rule would result in the inmate losing his recreation privileges for that day. It is here that the two parties versions diverge.

The plaintiff testified that after a verbal argument with defendant Selmer, which lasted approximately one minute, defendant Selmer left the area and returned to plaintiff's cell accompanied by defendant correction officers Steven Boyd, William Lotano, and Sergeant Wayne Ross. The plaintiff avers that the correctional officers ordered him to place his arms through the "feed-up" flap. When the plaintiff complied with the order, the defendants grabbed hold of his arms and beat him with their batons. The plaintiff recalls that the beating lasted for approximately 15 to 20 seconds and consisted of approximately 50 blows to the arm and wrist area.

After this initial beating with the batons, it is the testimony of the plaintiff that defendant Selmer then "slammed" closed the "feed-up" flap. This action resulted in the plaintiff's right index finger becoming lodged between the "feed-up" flap and the cell door. In order to extricate his finger, the plaintiff was forced to pull his finger with such force that his right index fingernail was torn off and the proximal phalanx was fractured. After the incident, the plaintiff was taken to the infirmary and given the appropriate medical treatment.

**Defendant's version:**

Defendants' version, not surprisingly, was markedly different than that of the plaintiff. As previously stated, the two parties agree about the course of events up to the point where defendant Selmer was called back to plaintiff's cell. At trial, defendant Selmer testified that upon returning to the plaintiff's cell, the two parties began to argue. This argument escalated when Boyd made an attempt to grab correctional officer Selmer by the arms and pull him through the open "feed-up" flap of his cell. Unsuccessful in this effort, Boyd then proceeded to grab at Selmer's groin area. Selmer reacted to these actions by placing Boyd in a bent-wrist hold and ordered him to place his hands back inside his cell. Boyd refused to comply and continued to struggle with Selmer.

Alerted to the altercation by a console officer, correctional officers Steven Boyd, William Lotano and Sergeant Wayne Ross

joined officer Selmer at the plaintiff's cell. On Sergeant Ross's orders, officer Selmer released the plaintiff from the bent-wrist lock and again ordered him to place his hands inside the cell. At this point, the plaintiff grabbed onto the open "feed-up" flap and refused to allow the officers to close the flap. Boyd was repeatedly warned that if he continued to prevent the officers from closing the "feed-up" flap, force might be used to insure compliance. Plaintiff Boyd continued to resist. Sergeant Ross thereupon ordered officers Lotano and Boyd to strike the plaintiff's arms in an effort to close the "feed-up" door.

Officers Lotano and Boyd as ordered, struck the plaintiff several times on his arms. These blows resulted in the plaintiff retracting his arms inside the cell. As the plaintiff retracted his arms inside the cell, correctional officer Selmer immediately closed the "feed-up" flap. Unfortunately, plaintiff Boyd had not completely brought his arms within the cell when correctional officer Selmer closed the "feed-up flap. Consequently, the plaintiff's right index finger was trapped between the "feed-up" flap and the cell door.

In an effort to free his finger, the plaintiff pulled his right hand away from the door with such force that it resulted in an avulsion fracture to the plaintiff's right index finger, along with several abrasions near the tip of this finger. The type of fracture displayed by the plaintiff's x-rays, according to the only medical testimony presented, clearly indicates that the fracture was the result of the pulling effort by the plaintiff, and not produced by a baton striking the plaintiff's hand. Upon notifying the guards of his injury, the plaintiff was escorted to the infirmary where he received appropriate medical attention.

Selmer's testimony was corroborated by the testimony of Sergeant Ross. Sergeant Ross gave a very similar account of the events as described by officer Selmer with the minor exception as to whether or not officer Selmer had a bent wrist lock on the plaintiff at the time Sergeant Ross arrived at plaintiff's cell.

After considering all of the testimony presented, and the credibility of the witnesses, this court finds the defendant's version of the events of May 30, 1990, to be a closer description of what actually took place. Support for this conclusion lies in the similarity of the testimony of defendants Ross and Selmer and the medical testimony of Dr. Edward Pasquarella. Dr. Pasquarella established with sufficient credibility, that the fracture of the plaintiff's right index finger could not have been produced by a baton blow and was more likely the result of the plaintiff pulling his finger from the closed "feed-up" flap.

Additionally, Gerald Allison, the facility nurse, testified that the plaintiff did not complain of, nor do any of the records indicate, any bruises or abrasions which would accompany a beating of 45–50 blows. Gerald Allison also testified that the right index fingernail was still attached to the plaintiff's finger at the time of his examination and the pictures verify this statement. Accordingly, because the plaintiff's version is filled with inconsistencies and ambiguities, this court will conclude the defendants version to be more similar to the truth and decide the matter on that basis.

## II. CONCLUSIONS OF LAW

### A. Eighth Amendment Excessive Force

Following the completion of the plaintiff's proof, the court dismissed the due process claims as to defendants pursuant to Fed.R.Civ.P. 50 on the grounds that their existed no credible evidence supporting such a claim. The following constitutes the court's conclusion of law as to the excessive force claim and the state law assault and battery claims brought against the defendants.

The Eighth Amendment protects prisoners from "cruel and unusual punishment." *See Wilson v. Seiter*, 501 U.S. 294, ——, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 102–05, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). However, it is "the unnecessary and wanton infliction of pain", *Estelle v. Gamble*, 429 U.S. at 103, 97 S.Ct. at 290, and not simply the "ordinary lack of due care for the prisoner's interests or safety" *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084,

89 L.Ed.2d 251 (1986), which the Eighth Amendment prohibits.

 To prevail in this civil rights action grounded in the Eighth Amendment, the plaintiff must show that the defendants used such excessive force to subdue him that the force could fairly be characterized as the "unnecessary and wanton infliction of pain." *See Hendricks v. Coughlin*, 942 F.2d 109, 113 (2nd Cir.1991). What is necessary to establish an "unnecessary and wanton infliction of pain" varies according to the nature of the constitutional violation. *Whitley v. Albers*, 475 U.S. at 320, 106 S.Ct. at 1084. "Wantonness does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" *Wilson v. Seiter*, 501 U.S. at ——, 111 S.Ct. at 2326 (quoting *Whitley v. Albers*, 475 U.S. at 320, 106 S.Ct. at 1084). In this manner, the court must consider the "wantonness" element within the context of the situation in which the underlying force occurred. *Id.* What may amount to the "unreasonable and wanton infliction of pain" is determined by the constraints facing the state official. As the *Whitley* court stated:

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Id.* at 321–322, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

 The Supreme Court has recently reaffirmed use of the *Whitley* test in situations such as the one now before the court. *See Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In *Hudson*, the Court stated that "whenever prison officials stand accused of using excessive force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

 Applying the *Whitley/Hudson* test, the Second Circuit recently stated:

> To determine whether the defendants acted maliciously, a jury should consider the following factors: the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085). If an evaluation of these factors leads the jury to conclude that the defendants acted maliciously, wantonness has been established. And an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads the jury to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

*Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993).

Applying these standards, this court finds that the use of force in the instant case was justified in light of the insistent refusal by the plaintiff to adhere to direct orders given by the correctional officers. As earlier noted, the plaintiff was warned several times that a continued failure to place his hands with in his cell would result in the exercise of physical force upon his being. Given the prior attempt by Mr. Boyd to grab at officer Selmer, and Boyd's continued resistance to allow the closing of the "feed-up" flap, the actions of the officers in striking the plaintiff 3–4 times with their batons was well within reason. Additionally, there is no proof that any defendant exerted more force than was reasonably needed in the situation. Consequently, the evidence in the case leads to the compelling conclusion that the force applied

against the plaintiff was done so in a good faith effort to restore discipline and not applied wantonly, maliciously, or sadistically. In this regard, the court credits defendants' explanation for the cause of plaintiff's right index finger injury being the most credible. That being the situation, the court finds as a matter of law that closing of the "feed-up" flap on the finger of the plaintiff to be accidental and not of the level sufficient to recover under a claim of excessive force. Accordingly, the court finds in favor of the defendants on this claim.

### B. Claim for Assault and Battery

 In addition to a violation of his Eighth Amendment rights, the plaintiff has also brought a claim against the defendants alleging that their conduct on May 30, 1990, is actionable under the state law torts of assault and/or battery. However, New York Correction Law § 24 prohibits any person from bringing a civil action "against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of the duties by such officer or employee." *See,* McKinney's Correction Law § 24 (1987); *Cepeda v. Coughlin,* 128 A.D.2d 995, 513 N.Y.S.2d 528 (3d Dep't) *app. denied,* 70 N.Y.2d 602, 518 N.Y.S.2d 1024, 512 N.E.2d 550 (1987); *Brown v. Coughlin,* 758 F.Supp. 876 (S.D.N.Y.1991).

Thus, since it is has been well established that the actions of the defendants which are the impetus of the current lawsuit, arose as a result of the defendants discharging their duties as correctional officers at the Coxsackie Correctional Facility, this court is compelled to dismiss these claims.

### III. CONCLUSION

For the reasons discussed above, the court finds in favor of the defendants on all claims brought against them. Accordingly, it is hereby

**ORDERED** that the complaint is dismissed with privileges and the Clerk of the Court is to enter judgment in favor of the defendants on all claims.

**IT IS SO ORDERED.**