Sean SIMPKINS, Plaintiff,

v.

BELLEVUE HOSPITAL, Dr. John Doe, Health Hospital Corporation, New York City Department of Corrections, Defendants.

No. 92 Civ. 5065 (KMW).

United States District Court, S.D. New York.

Aug. 18, 1993.

**70**

Sean Simpkins, pro se.

Sanjay Malhotra, Asst. Corp. Counsel, New York City, for municipal defendants.

1. Defendant Dr. John Doe is the doctor who performed the surgery that forms the basis of the Complaint. Plaintiff has been unable to identify him, and, of course, he has not been served with the summons and Complaint.

## ORDER

KIMBA M. WOOD, District Judge.

*Pro se* plaintiff brings this action pursuant to 42 U.S.C. § 1983, essentially alleging that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments in connection with sinus surgery performed in 1990. Defendants[1] moved to dismiss the action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 22, 1993, Magistrate Judge Grubin issued a Report and Recommendation ("Report") recommending that defendants' motion be granted in part and denied in part.

The Report instructed the parties that any objections to the recommendations must be filed within 10 days to preserve the right of appellate review of this court's decision with respect to the Report. No objections to the Report have been filed; nor has any party requested an extension of time within which to file objections.

Although not required under Fed.R.Civ.P. 72, the court conducted a *de novo* review of the Report. After thoroughly reviewing the governing legal principles, Magistrate Judge Grubin properly concluded that certain of plaintiff's claims could not be dismissed at this stage of the litigation. The court states no opinion on the merits of plaintiff's claims, except to reiterate that he states a cause of action for which relief can be granted under 42 U.S.C. § 1983. I, therefore, accept and adopt the recommendations in the Report.

### Conclusion

For substantially the reasons set forth in the Report, defendants' motion is granted in part and denied in part. The Clerk of the Court is directed to dismiss count IV of the Complaint. The Complaint against defendant New York City Department of Corrections is, therefore, dismissed. Plaintiff may pursue counts I, II and III against defendants New York City Health and Hospitals Corporation and Bellevue Hospital to the extent he alleges that these defendants established official policies with respect to the hiring, supervision or training of doctors as-

signed to perform surgery on inmates that constitute "deliberate indifference to serious medical needs." Report at 5. The parties are directed to adhere to the Scheduling Order issued by Magistrate Judge Grubin on July 22, 1993.

SO ORDERED.

GRUBIN, United States Magistrate Judge:

Proceeding *pro se* and *in forma pauperis,* plaintiff brings this action for compensatory and punitive damages pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution in connection with sinus surgery performed on November 14 or 15, 1990. Pending is the motion of defendants Bellevue Hospital ("Bellevue"), New York City Health and Hospitals Corporation ("NYCHHC") and New York City Department of Corrections ("NYCDOC") to dismiss the claims against them pursuant to Fed. R.Civ.P. 12(b)(6). "Dr. John Doe," also named as a defendant, has not been served with the complaint. For the following reasons, I respectfully recommend the motion be granted in part and denied in part.

### BACKGROUND

According to the complaint, while a pre-trial detainee at the Manhattan House of Detention, plaintiff was taken to the Ear, Nose and Throat Clinic at Bellevue for sinus surgery. A clinic surgeon, defendant Dr. John Doe, instead of operating where indicated by a CAT scan that had been taken of plaintiff's nasal area, "cut blindly into plaintiff's nasal passages" without using the CAT scan and operated on the wrong sinuses. Complaint, Counts I, II. At the time of the filing of the complaint, plaintiff stated that he could not breathe out of his nose properly due to continued infections, that he suffered from "nose bleeds, pus filled sinuses, . . . eye blinding headaches, sinus pressure, nasal drip/discharges, and blood clots in nasal tissues" and that he was scheduled to receive corrective surgery at Auburn Correctional Facility to which he had been transferred. *Id.,* ¶ IV–A and Relief ¶ 1.

Plaintiff's complaint contains four counts. Count I, alleging gross negligence and other causes of action against Dr. John Doe, also claims liability of Bellevue "for said defendant Dr. John Doe, for the hiring of an incompetent doctor, who could not perform a simple non-complex operation to plaintiff's nasal sinuses." Complaint at 1A. Count II alleges liability of Bellevue because Dr. John Doe

> was acting under the policies of Bellevue Hospital and authority . . . [and] Bellevue Hospital should have made an inquiry into defendant Dr. John Doe, to see if he was qualified to perform said surgery properly. Because Bellevue Hospital let an incompetent doctor perform surgery to plaintiff nasal sinuses, which resulted in the cutting of the wrong sinuses in plaintiff's nose. Bellevue Hospital knew of said surgery to be performed on plaintiff and therefore should be held libel under the malpractice rule, gross negligence and failure to protect plaintiff from said harm.

*Id.* Count III is against NYCHHC alone, alleging as follows:

> The City of New York, Health, Hospital corporation is also negligent in plaintiff's pain and suffering, being the over seer of all of the city owned hospitals, their job is to make sure that proper care and medical attention is given to all patients who enter these city hospitals by the medical staff that run these city owned hospitals. They're also responsible for the hiring and placement of graduate and seasoned doctors, throughout the city owned hospitals.

*Id.* at 2B. Count IV is against NYCDOC alone and pertains to events subsequent to the surgery. Plaintiff alleges that after his operation an appointment was made with another physician at Kings County Hospital "to correct the deliberate indifference caused by the defendant Dr. John Doe at Bellevue Hospital," but that prior to his appointment, NYCDOC transferred plaintiff to an upstate prison facility, making him unable to keep that appointment. He charges NYCDOC with gross negligence and deliberate indifference in violation of the Fourteenth Amendment for this transfer.

## DISCUSSION

On a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) *and* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993); *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988). A complaint should not be dismissed for failure to state a claim unless, "after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York,* 974 F.2d at 298 (quoting *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991)). Moreover, *pro se* complaints are to be liberally construed. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986).

■ A claim under § 1983 for inadequate medical treatment is governed by the standards of the Eighth and Fourteenth Amendments to the Constitution, violation of which may be shown by prison officials' "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).[1] A challenge to a decision based on medical judgment generally does not implicate the Eighth Amendment's cruel and unusual punishment clause but constitutes, at most, a

medical malpractice claim which may be cognizable in a state court but not in a federal § 1983 action. *Estelle v. Gamble,* 429 U.S. at 106–07, 97 S.Ct. at 292; *Arroyo v. Schaefer,* 548 F.2d 47, 49–50 (2d Cir.1977); *Church v. Hegstrom,* 416 F.2d 449, 451 (2d Cir.1969); *Kaminsky v. Rosenblum,* 737 F.Supp. 1309, 1316 (S.D.N.Y.1990), *appeal dismissed,* 929 F.2d 922 (2d Cir.1991). There is no right to the treatment of one's choice, *McCullough v. Scully,* 784 F.Supp. 115, 117 (S.D.N.Y.1992); *Harding v. Kuhlmann,* 588 F.Supp. 1315, 1317 n. 8 (S.D.N.Y.1984), *aff'd,* 762 F.2d 990 (2d Cir.1985), and "mere negligence in the treatment of a prisoner's physical condition, or claims based on differences of opinion over matters of medical judgment, fail to rise to the level of a § 1983 violation," *Sloan v. Zelker,* 362 F.Supp. 83, 84 (S.D.N.Y.1973) (quoting *Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir.1972)); *see Gill v. Mooney,* 824 F.2d at 195.

■ Furthermore, while a municipality and its agencies are subject to liability under § 1983, such liability cannot result merely from an improper or even unconstitutional act of its employees under a theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978). Rather, the conduct for which liability is sought to be imposed must have been taken pursuant to a municipality's "official policy." This "official policy" requirement was found by the Supreme Court in *Monell* on analyses of the language of § 1983 itself (imposing liability on a person who "subjects or causes to be subjected" someone to a deprivation of federal rights) and of the legislative history of the provision (showing Congress doubted its power to impose liability on a municipality to control the conduct of others as opposed to itself). It was intended "to distinguish acts

1. Since plaintiff was a pretrial detainee at the time of the surgery, the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment would be the appropriate basis for his claims. *Collins v. City of Harker Heights,* —— U.S. ——, —— ——, 112 S.Ct. 1061, 1069–70, 117 L.Ed.2d 261 (1992); *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). The standards on which his medical treatment is to be judged are, however, the same as those under the

Eighth Amendment. Therefore, Eighth Amendment case law is applicable herein. *See, e.g., Cuoco v. Quinlan,* No. 91 Civ. 7279 (LMM), 1992 U.S.Dist.Lexis 17476 at *18–20, 1992 WL 350755 at *6 (S.D.N.Y. Nov. 12, 1992) ("[T]he Eighth Amendment's prohibition against cruel and unusual punishment is coextensive with any substantive rights afforded under the Due Process Clause.... A similar showing of deliberate indifference is required in order to sustain a claim based on the Due Process Clause.").

of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. . . . that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (emphasis in original; footnote omitted). A single act of a governmental official or employee thus does not give rise to liability unless it was one taken pursuant to or caused by an official policy or the official or employee was one who possessed final authority to establish municipal policy with respect to the conduct at issue. Only thus can it be said that the activity is that of the municipality.

■ The New York City Health and Hospitals Corporation is a public benefit corporation created to provide health and medical services to New York City residents pursuant to the New York City Health and Hospitals Corporation Act, N.Y.Unconsol.Laws §§ 7382 *et seq.* (McKinney 1979 & 1993 Supp.). As a municipal corporation, NYCHHC's liability under § 1983 is governed by the principles set forth in *Monell v. Department of Social Services* and its progeny. *Rookard v. Health & Hosps. Corp.,* 710 F.2d 41, 44–45 (2d Cir.1983); *Brown v. Coughlin,* 758 F.Supp. 876, 884 (S.D.N.Y. 1991). According to the defendants' memorandum of law in support of their motion to dismiss the complaint, Bellevue Hospital is one of several NYCHHC facilities that provides services and is operated, managed, administered and controlled by NYCHHC. (The defendants state that "[a]ccordingly, Bellevue Hospital and HHC should be construed as one and the same defendant." Memorandum at 4, n. 2.) The New York City Department of Corrections is an agency of the City of New York, and the scope of § 1983 liability for its unconstitutional acts is thus also defined by the principles discussed above. *See Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986);

*Griffin v. Rikers Island House of Detention,* No. 91 Civ. 1694 (LBS), 1993 U.S.Dist.Lexis 389 at *3–6, 1993 WL 17203 at *1–2 (S.D.N.Y. Jan. 19, 1993).

Defendants contend that plaintiff has failed to allege the existence of any official policy which gave rise to the alleged violation of his rights and has not pleaded any facts that could be read to constitute such a policy. Therefore, they argue, his complaint is based merely on a *respondeat superior* theory and must be dismissed. They do acknowledge that plaintiff makes a "conclusory allegation that the doctor was 'acting under the policies of Bellevue Hospital,'" but state that "he fails to state or establish exactly what that policy is." Memorandum at 7. They also appear to contend that the complaint is insufficient because plaintiff has not alleged "that there were any other incidents where defendants violated any policy of [sic] practice." *Id.*[2]

■ A plaintiff is not required to "state or establish exactly" in his complaint the policy by which he alleges the defendants violated his rights, nor is he required to plead more than a single instance of misconduct. Both these contentions were recently dealt with by the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), in which the Court held § 1983 complaints should not be held to a "heightened pleading standard" beyond what is required generally by Fed.R.Civ.P. 8(a). In rejecting a heightened pleading standard for § 1983 cases applied by the Fifth Circuit, the Court endorsed the following language of the Ninth Circuit in *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 (9th Cir.1988):

> . . . a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct con-

**2.** The defendants' language is curious insofar as it indicates the plaintiff could state a claim by alleging the defendants *"violated"* a policy or practice because a violation of their own policy would not necessarily give rise to a claim. I

construe them to mean, rather, that the plaintiff should be required to allege other incidents where the defendants' policy violated his or others' rights.

formed to official policy, custom, or practice.

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* ——— U.S. at ——–——, 113 S.Ct. at 1161–62. In addition, the Court explicitly rejected the argument that "[t]o establish municipal liability under § 1983 . . . a plaintiff must do more than plead a single instance of misconduct." *Id.,* ——— U.S. at ———, 113 S.Ct. at 1162.[3]

■ It is correct that plaintiff does not *expressly* plead in the complaint an official policy or custom or conduct of an official policymaker which allegedly caused the violations of his rights he asserts. However, I believe that this failing of the complaint is one of language of plaintiff *pro se* and that if we are to obey our duty to construe *pro se* complaints liberally, this one should not be dismissed at this stage. To be sure, if it were to have been drafted by a lawyer, the simple addition of a few key words would have brought it clearly into an acceptable form. Thus, in his claims against Bellevue (Counts I and II) plaintiff states that the hospital should be held responsible because it hired an incompetent doctor and allowed him to perform surgery on plaintiff without an inquiry into his qualifications to do so, thereby failing to protect him from the harm it knew could result from this surgery upon him. (*See* p. 71 above.) While the precise language could be read to focus only upon Bellevue's hiring of *this* doctor and allowing him to perform *this* operation on plaintiff, it also could be construed to allege that Belle-

vue's hiring and/or supervision policies or practices are such that would allow unqualified surgeons to perform operations on prisoners.[4] Similarly, while the claim in Count III against NYCHHC expressly pleads only that NYCHHC is responsible for maintaining proper care in its hospitals and hiring doctors to work in them, it could be construed to allege that its policies in these regards are so lax as to amount to gross negligence or deliberate indifference.

Thus construed against Bellevue and NYCHHC, the complaint does state a claim under § 1983, alleging a causal link between a municipal policy or custom and the constitutional deprivation. In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that an inadequate police training program could constitute a city "policy or custom" that is actionable under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388, 109 S.Ct. at 1204. However, beyond merely showing that "a particular employee may be unsatisfactorily trained," for municipal liability to attach a plaintiff must identify a "deficiency in a city's training program" relevant to "the usual and recurring situations with which [the employees] must deal" that is "so obvious" that the failure to provide proper training constitutes deliberate indifference to the need; further, a plaintiff must show that the deficiency is "closely related to the ulti-

---

3. It should be noted that the *Leatherman* opinion, issued by the Supreme Court on March 3, 1983, appears to change the law in the Second Circuit which theretofore generally required dismissal of a complaint which merely asserted conclusorily the existence of a policy without allegations of fact beyond the single incident alleged in the complaint. *See, e.g., Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993); *Ricciuti v. New York City Transit Authority,* 941 F.2d at 124. *See also Sevier v. City of Lawrence,* No. 92–4261–SAC, 1993 U.S.Dist.Lexis 8149 at *11, 1993 WL 192836 at *4 (D.Kan. May 28, 1993) (citing the Second Circuit's decision in *Dwares* as an example of the heightened pleading standard rejected in *Leatherman* ). Indeed, had this report and recommendation been issued prior to *Leatherman,* dismissal of the complaint in its entirety may well have been mandated by the then-existing state of circuit law in this area.

4. In an attempt to use the key word "policy" which plaintiff apparently understands is required to state a claim, he states in the complaint that Dr. John Doe "was acting under the policies of Bellevue Hospital and authority." This statement, however, does not further his cause. Plaintiff alleges that his grievous injuries came about because of Dr. Doe's ignoring the CAT scan that Bellevue had performed. It is quite clear from his allegations that Bellevue's medical policy was to have its doctors perform surgery as dictated by, *inter alia,* what was shown on a CAT scan but that Dr. Doe failed to do so. The issue is not whether Dr. Doe's actions were taken in accordance with Bellevue's medical procedure policies, but whether Bellevue's supervision policies show deliberate indifference, *i.e.,* whether it had policies sufficient to assure that its medical policies were properly carried out.

mate injury." *Id.* at 390–91, 109 S.Ct. at 1205–06. *See also Walker v. City of New York,* 974 F.2d at 296–98.

The Supreme Court's holding in *City of Canton* with respect to training of police is equally applicable to claims concerning training of medical personnel and hiring and supervision of medical personnel. *See, e.g., Brown v. Coughlin,* 758 F.Supp. 876, 884 (S.D.N.Y.1991) ("In sum, I find that there are genuine issues of material fact as to whether the injuries suffered by Brown were the foreseeable result of systemic and systematic inadequacies and whether such inadequacies are specifically traceable to municipal policies or customs, including deliberately indifferent training, supervision, staffing and/or the acts, omissions or decisions of named individual defendants."); *Lopez v. Ward,* 719 F.Supp. 261 (S.D.N.Y.1989), *aff'd,* 898 F.2d 138 (2d Cir.1990). *See also DiGidio v. Pung,* 920 F.2d 525, 532–33 (8th Cir.1990).

Based on these principles, the claim in the instant case that plaintiff's injuries were caused by the city's failure to assure proper hiring or supervision or training of surgeons assigned to perform operations on inmates is one that should not be dismissed at this stage. It is clear that if, in fact, there are deficiencies in NYCHHC's/Bellevue's policies in these regards, the deficiencies could be such that NYCHHC's/Bellevue's failure would amount to deliberate indifference. It may well be the case that we may learn otherwise on a motion for summary judgment. On the record before us at this point, however, which consists only of the complaint on this motion to dismiss, we have no information concerning what relevant city policies exist. It is unknown, for example, who is responsible in the system for hiring or supervising surgeons at city hospitals, whether Bellevue and/or NYCHHC play any role or should play any role in the training of surgeons and the means by which Dr. John Doe was assigned to perform plaintiff's surgery. The answers to questions such as these and others may be readily available from documentation that may show there is no genuine issue of fact for this case. It cannot be said at this stage, however, especially in light of *Leatherman,* that, after viewing the allega-

tions of the complaint in a favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. New York City Transit Authority,* 941 F.2d at 123 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

Count IV of the complaint, however, purporting to state a claim because NYC-DOC transferred plaintiff to another facility, rendering him unable to meet with a doctor at Kings County Hospital who was to correct the problems caused by Dr. John Doe, must be dismissed. There is no allegation that he was transferred from the Manhattan House of Detention, which is only a temporary holding facility, to prevent him from receiving medical care or otherwise not in the normal course of NYCDOC procedures. Nor can the allegations be construed to set forth that some official policy or custom caused him harm. Indeed, he alleges that upon his transfer the medical personnel at the Downstate and Auburn facilities did give him prompt attention and scheduled corrective surgery. Even viewing the allegations of Count IV in the most favorable light, they cannot be seen to state a claim of deliberate indifference cognizable in a § 1983 action.

## CONCLUSION

In sum, defendants' motion with respect to Counts I, II and III of the complaint should be denied insofar as these counts state a claim that NYCHHC's/Bellevue's policies with respect to the hiring, supervision or training of doctors assigned to perform surgery on inmates constitute deliberate indifference. In all other respects, the motion to dismiss should be granted.

Dated: July 22, 1993