William R. McGRATH, Plaintiff,

v.

Joseph G. MacDONALD, Individually and as a Police Officer of the Boston Police Department, and the City of Boston, Defendants.

Civ. A. No. 93–12363–RCL.

United States District Court,
D. Massachusetts.

May 13, 1994.

Francis J. Di Mento, Jr., Di Mento & Sullivan, Boston, MA, for plaintiff.

William J. Walsh, Asst. Corp. Counsel, City of Boston Law Dept., Boston, MA, for defendants.

## ORDER

LINDSAY, District Judge.

Recommendation Approved.

**REPORT AND RECOMMENDATION RE: DEFENDANT CITY OF BOSTON'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) (DOCKET ENTRY # 5); DEFENDANT CITY OF BOSTON'S MOTION TO STRIKE PURSUANT TO FED.R.CIV.P. 12(f) (DOCKET ENTRY # 10)**

April 26, 1994

BOWLER, United States Magistrate Judge.

On November 23, 1993, defendant the City of Boston ("the City") filed a motion to dismiss Count Three of the complaint (Docket Entry # 5) and on December 8, 1993, plaintiff William R. McGrath ("plaintiff") filed an opposition (Docket Entry # 6).[1] On January 28, 1994, the City filed a reply brief and a motion to strike. (Docket Entry # 10). On February 8, 1994, this court held a hearing and took the motions to dismiss (Docket En-

---

1. On December 20, 1993, the City filed a motion for leave to file a reply brief to plaintiff's opposition to the motion to dismiss. (Docket Entry # 7). On December 29, 1993, the district judge allowed the City's motion for leave to file a reply brief. (Docket Entry # 7).

try #5) and to strike (Docket Entry #10) under advisement.

## BACKGROUND

Plaintiff, a resident of the Commonwealth of Massachusetts, filed this civil rights action on October 29, 1993, pursuant to 42 U.S.C. § 1983 ("section 1983") and 42 U.S.C. § 1988. (Docket Entry #1). Plaintiff asserts claims against two defendants, Boston Police Department Detective Joseph G. MacDonald ("MacDonald") and MacDonald's employer, the City, for civil rights violations arising out of an alleged unreasonable arrest on October 31, 1990, in Boston, Massachusetts.[2] Plaintiff alleges that MacDonald arrested and incarcerated him without probable cause and that the City is liable for MacDonald's actions because it maintained a policy of inadequately training its police officers to evaluate probable cause. (Docket Entry #1).

Count One of plaintiff's three count complaint alleges that MacDonald's acts constituted an unreasonable arrest and imprisonment in violation of the Fourth and Fourteenth Amendments and section 1983. Count Two alleges that MacDonald's acts amounted to the intentional infliction of emotional harm. (Docket Entry #1).

The only allegations against the City are set forth in Count Three of the complaint.

Count Three, which the instant motions address, alleges that the City:

> as a matter of policy and practice, has with a deliberate indifference, failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officerin [sic] this case to engage in the above-stated unlawful conduct.

(Docket Entry #1).

In its motion to dismiss (Docket Entry #5), the City argues that Count Three fails to state a claim upon which relief can be granted and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). The City contends that Count Three is vague and conclusory and that the complaint fails to show an affirmative link between MacDonald's allegedly unconstitutional acts and an official policy of the City. (Docket Entry #5).

In his opposition (Docket Entry #6), plaintiff supports his inadequate training claim by quoting a passage from the Report by the Boston Police Management Review Committee dated January 14, 1992 ("the St. Clair Report"). (Docket Entry #6). The St. Clair Report cites areas where, in the opinion of its authors, the BPD's training program is inadequate. (Docket Entry #6).[3]

■ The St. Clair Report, however, was not cited in the complaint and thus is not an

---

2. The complaint alleges that, on October 31, 1990, MacDonald, a detective of the Boston Police Department ("BPD"), telephoned plaintiff and asked plaintiff to meet him at a Boston police station to discuss the recovery of a wallet containing plaintiff's identification cards at the scene of a crime. That day, plaintiff voluntarily met MacDonald at the station and explained that he had reported his wallet missing to the police two years earlier. Prior to the meeting, MacDonald had confirmed that plaintiff had indeed reported his wallet missing two years before. At the conclusion of the meeting, MacDonald placed plaintiff under arrest without a warrant. Plaintiff was later charged with, and found not guilty of, breaking and entering and falsifying a license to carry firearms. (Docket Entry ##1 & 4).

3. In the spring of 1991, Boston's mayor appointed a committee of eight persons, serving on a *pro bono* basis and chaired by Attorney James St. Clair, to review the inner workings of the BPD over a two year period and to submit recommendations based on its findings. In preparing the St. Clair Report, the committee interviewed more

than 85 BPD officers and employees, in addition to various federal, state and local law enforcement officials, on a confidential basis. The Committee additionally reviewed confidential BPD documents. (Docket Entry #10, Ex. A).

As described by one court in this district, ruling on a motion for summary judgment, "[the St. Clair] Report concluded, essentially, that systematic deficiencies plagued the functioning of the [BPD]. Specifically, the Committee found inadequacies in the recruitment, training, evaluation and supervision of police officers." Regarding these broad conclusions, the district judge stated that, if used to prove "a City policy of inadequate police training ... [the St. Clair Report,] in and of itself, would provide a *prima facie* case against [the City] in every case, no matter how frivolous...." Further, the district judge found the report "constitutes inadmissible hearsay" and "lacks the requisite objective guarantees of trustworthiness" for summary judgment purposes. (Docket Entry #10, Ex. A).

appropriate subject for consideration on a motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (complaint may not be amended by the opposition briefs; on a motion to dismiss, consideration is limited to the pleadings); *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977) (in ruling on a motion to dismiss, court may consider only allegations in complaint). Thus, though the City moves to strike references to the St. Clair Report, it is unnecessary to "strike" such references inasmuch as it is improper for this court to consider the report when deciding the motion to dismiss. The motion to strike (Docket Entry # 10) is therefore **MOOT.**

### DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), "the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party." *Hathaway v. Stone,* 687 F.Supp. 708, 710 (D.Mass.1988). A court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977); *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (on motion to dismiss, issue is not whether plaintiff will prevail, but whether, construing complaint liberally, plaintiff should be entitled to offer evidence in support of his claims). While the complaint need only set forth "a generalized statement of facts," the plaintiffs must provide enough information "to outline the elements of the pleaders' claim." *Kadar Corp.,* 549 F.2d at 233.

■ On a motion to dismiss, civil rights claims are subject only to normal standards of pleading. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).[4] The correct standard for assessing the sufficiency of the instant complaint, therefore, is whether, accepting the factual allegations in the complaint as true and construing them in the light most favorable to plaintiff, the complaint shows any set of facts which could entitle plaintiff to relief. *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### A. Municipal Liability

■ "It is axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983."[5] *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 209 (1st Cir.1990), *cert. denied,* 500 U.S. 956, 111

---

**4.** Prior to the *Leatherman* decision, this circuit applied a heightened standard for specificity in pleading on Rule 12(b)(6) motions. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (on a motion to dismiss, "[t]he need [for specific factual allegations] is perhaps greater where allegations of civil rights violations lie at the suit's core"); *Cuddy v. City of Boston,* 765 F.Supp. 775, 777 (D.Mass.1991) (on a motion to dismiss, the First Circuit "has consistently required plaintiffs, at a minimum, to outline the specific facts on which they rely in civil rights cases"); *see also Glaros v. Perse,* 628 F.2d 679, 684 (1st Cir.1980) (while discovery may help clarify issues, plaintiff in his complaint must plead specific facts in support of civil rights violation); *Cohen v. Illinois Inst. of Technology,* 524 F.2d 818, 827 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) (on a motion to dismiss, plaintiff "is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which [he] has not made").

In *Leatherman,* however, the Court specifically held that "a federal court may [not] apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under [section 1983]." *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1161. The Court stated that, instead of relying on motions to dismiss to dispose of unmeritorious municipal liability claims, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.,* 113 S.Ct. at 1163. The Justices specifically overruled caselaw requiring "a plaintiff to do more than plead a single instance of misconduct" to survive a motion to dismiss in a municipal liability case. *Id.,* 113 S.Ct. at 1162–63.

**5.** Therefore, to the extent that the complaint rests on the allegation that the City, through its agents, employees, servants or representatives, acted in contravention of plaintiff's civil rights, it must fall.

S.Ct. 2266, 114 L.Ed.2d 718 (1991) (holding municipal liability cannot be premised on theory of *respondeat superior*); *see also Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (same).

Rather, in order to establish municipal liability, "a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989) (liability under section 1983 requires demonstration of municipal policy or custom) (citations omitted); *see Bordanaro v. McLeod*, 871 F.2d 1151, 1158–59 (1st Cir.1989), *cert. denied*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989) (discussing municipal liability based on unconstitutional custom and failure to train); *see generally City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989) (discussing municipal liability based on failure to train); *Hathaway v. Stone*, 687 F.Supp. 708, 710 (D.Mass.1988) (requiring demonstration that employee acted pursuant to official policy or custom). The plaintiff must satisfy a two pronged test, "demonstrat[ing] both the existence of a policy or custom and a causal link between that policy and the constitutional harm," to sustain a finding of municipal liability. *Santiago*, 891 F.2d at 381.

Where, as here, a municipal policy is not by its terms unconstitutional,[6] "considerably more proof than the single incident will be necessary" to ultimately establish at trial both fault on the part of the municipality and the causal nexus between the policy and the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1984).[7] In such cases, the municipal policy must be shown to be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037.

■ To establish municipal liability based on a policy of inadequate training of police officers, a plaintiff must show that the deficiency in the city's training program "evidence[s] gross negligence [by the municipality's policymakers] amounting to deliberate indifference to the constitutional rights of those with whom the police would come into contact." *Bordanaro*, 871 F.2d at 1158–59; *see generally Harris*, 489 U.S. at 389, 109 S.Ct. at 1205 (only where municipality's failure to train evidences a "deliberate indifference" can such a shortcoming be properly thought of as a city "policy" actionable under section 1983).

### B. *The Impact of Leatherman*

In *Leatherman*, the Court rejected the respondents' contention, and the holdings of the courts below, that "the complexity of the underlying substantive law" in municipal liability suits effectively creates a "heightened pleading standard." *Leatherman*, —— U.S. at —— – ——, 113 S.Ct. at 1162–63. Rather, the Court held that "the liberal system of 'notice pleading'" set forth in Federal Rule of Civil Procedure 8(a)(2) applies to municipal liability actions. *Id.*[8]

---

**6.** The Court has emphasized the distinction between policies which are facially, and theoretically, constitutional, such as a policy to institute a police force, and policies which are by their very nature unconstitutional. "The 'policy' of the [city] that was challenged in *Monell* was a policy that by its terms ... violated the constitutional rights of pregnant employees ... Here, however, the 'policy' [of instituting a police force] is far more nebulous, and a good deal further removed from the constitutional violation...." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985).

**7.** "[T]hat a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy [the legal] requirement...." *Tuttle*, 471 U.S. at 824 n. 8, 105 S.Ct. at 2437 n. 8. In inadequate training cases, the inadequacy of the training program must be "obvious," *Harris*, 489 U.S. at 390, 109 S.Ct. at 1205, and the plaintiff must show a causal link sufficient to ensure that a municipality is not held liable for "the aberrant and unpredictable behavior of its employees." *Bordanaro*, 871 F.2d at 1155. Moreover, the federal courts should refrain from engaging in "an endless exercise of second-guessing municipal employee training programs." *Harris*, 489 U.S. at 391–92, 109 S.Ct. at 1206–07.

**8.** The Court reiterated its earlier interpretation of Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief":

[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and

The allegations in the *Leatherman* complaint are substantially similar to those in the instant case. *Leatherman* was a municipal liability suit brought under section 1983 by homeowners whose homes had been searched by police. *Id.*, 113 S.Ct. at 1160.[9] While the Court's opinion did not specifically recount the allegations of the complaint, the court of appeals addressed the allegations at length and summarized the complaint as follows:

> [Plaintiffs'] complaint alleged generally that the municipalities failed to formulate and implement an adequate policy to train its [sic] officers in the proper manner to execute search warrants and respond when confronted by family dogs. The allegations were of the 'boilerplate' variety, *alleging no underlying facts other than the [two] events [of police misconduct] described above* to support the assertions that the municipalities had adopted policies, customs, and practices condoning the conduct of the officers involved....
>
> ... [w]hile plaintiffs' complaint sets forth the facts concerning the police misconduct in great detail, it fails to state any facts with respect to the adequacy (or inadequacy) of the police training.

*Leatherman*, 954 F.2d at 1056 & 1058 (footnotes omitted) (emphasis added).

In enunciating the issue before the Court in *Leatherman*, Chief Justice Rehnquist cited a Ninth Circuit case which illustrates the standard the Court chose to adopt:

> we granted certiorari [after the court of appeals applied a heightened pleading standard] ... to resolve a conflict among

the courts of appeals concerning the applicability of a heightened pleading standard to § 1983 actions alleging municipal liability. *Compare, e.g., Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 ([9th Cir.] 1988) ("a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss *even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy*, custom, or practice") (internal quotation marks omitted).

*Id.* at 1161–62 (emphasis added). Clearly, the Court referenced *Karim–Panahi*, and noted the factual specificity of that case's complaint, to more particularly elucidate the pleading standard it was adopting.

■ Liberally construing the complaint and accepting its allegations as true, this court finds that the complaint states a cause of action under section 1983 against the City. In light of the preceding discussion, the complaint adequately provides a short and plain statement which gives the City fair notice of plaintiff's claims and the grounds therefor. *See* Fed.R.Civ.P. 8(a); *Leatherman*, ––– U.S. at –––, 113 S.Ct. at 1163 (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Plaintiff claims that a City policy of inadequately training police officers to evaluate probable cause to arrest caused a violation of his civil rights. Plaintiff states specific facts alleging a single incident where a City police officer took action in violation of plaintiff's civil rights.[10]

In the instant case, the allegations of the complaint are at least as detailed as the

---

plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.*, 113 S.Ct. at 1163 (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

9. The fact that *Leatherman* involved two separate occasions of alleged police misconduct did not influence the Court's decision to deny the motion to dismiss, and thus cannot be used to distinguish *Leatherman* from the instant case. The circuit court found that two similar occurrences do not constitute the "pattern of similar incidents" required to establish the existence of a municipal policy. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1058 (5th Cir.1992). The Supreme Court, in reversing the lower court, did not address the question of whether the two similar

incidents alleged could constitute "a pattern of similar incidents" and, accordingly, the significance of two, rather than one, incidents was either not in the Court's deliberation or was unnecessary to the Court's decision. *Leatherman*, ––– U.S. at –––, 113 S.Ct. at 1160.

10. *Leatherman*, however, does not eviscerate the rule that "a single alleged incident of individual misconduct will not support the inference that the City failed to train, supervise, or discipline its officers." *Hathaway v. Stone*, 687 F.Supp. 708, 710–11 (D.Mass.1988); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) (absent proof of unconstitutional municipal policy, single incident of unconstitutional activity insufficient to establish municipal liability). Instead, it permits a plaintiff to clear the motion to dismiss hurdle by

**6**

complaint at issue in *Leatherman.* The instant complaint also traces the necessary legal elements of a municipal liability cause of action at least as closely as the complaint did in *Leatherman.* In particular, plaintiff alleges that MacDonald's conduct was caused by or was in conformity with an official policy of the City. *See also Goldsmith v. City of Chicago,* 1993 WL 532445 (N.D.ILL. Dec. 21, 1993) ("Courts have recently interpreted the *Leatherman* standard to allow complaints of similar caliber [to the *Leatherman* complaint] to survive a motion to dismiss"); *see Jones v. City of Chicago,* 1993 WL 401896 (N.D.Ill. Oct. 1, 1993); *Simpkins v. Bellevue Hosp.,* 832 F.Supp. 69, 73–74 (S.D.N.Y.1993); *Hooker v. City of DeKalb,* 1993 WL 224984 (N.D.Ill. June 17, 1993).

As phrased, plaintiff's complaint satisfies the standard enunciated under *Leatherman.* Stated otherwise, the complaint provides the City with fair notice of plaintiff's claims and sufficiently sets forth facts to outline the City's liability as a municipality. The factual allegations reasonably support both the inference of a City practice so widespread as to amount to deliberate indifference to the rights of its inhabitants and the inference that such a practice constituted the moving force behind MacDonald's acts.

### CONCLUSION

This court therefore **RECOMMENDS**[11] that the City's motion to dismiss Count Three of the complaint (Docket Entry # 5), plaintiff's claim for municipal liability against the City, be **DENIED.** The City's motion to strike references to the St. Clair Report (Docket Entry # 10) is **MOOT** inasmuch as this court did not rely on the St. Clair Report in resolving the motion to dismiss.

alleging, *inter alia,* that a municipal policy might reasonably be inferred from facts setting forth a single incident of police misconduct.

**11.** Any objections to this Report and Recommendation must be filed with the Clerk of court within ten days of receipt of the Report and Recommendation and must identify the portion of the Report and Recommendation to which objection is made and the basis for such objec-

tion. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).